# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:07CV5-02-F[1]
### (3:04CR107-2-F)

| | | |
|---|---|---|
| HAROLD FULLER, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | <u>O R D E R</u> |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |
| | ) | |

**THIS MATTER** is before this court upon the petitioner's Motion to Vacate, Set Aside Or Correct Sentence pursuant to 28 U.S.C. § 2255, filed January 3, 2007; on the "Government's Answer To Petitioner's Motion To Vacate," construed as a <u>de facto</u> motion to dismiss,[2] filed April 10, 2007; and on the petitioner's "Affidavit In Response To Government's Motion To Dismiss . . . ," and his "Motion For Default Judgment," both filed May 21, 2007.

---

[1]The underlying criminal case originally was assigned to the Honorable H. Brent McKnight, United States District Judge. However, upon the death of Judge McKnight, and a determination that the other two district judges in this District had conflicts which prevented them from presiding over this case, the matter was assigned to the Honorable David A. Faber, United States District Judge for the Southern District of West Virginia. Accordingly, the instant Motion to Vacate also has been assigned to Judge Faber for resolution.

[2]The government's purported Answer makes numerous references to the underlying criminal record and seeks a dismissal for the plaintiff's failure to state a claim for relief. Therefore, the court construed that Answer as a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and gave the petitioner an opportunity to respond to the document as such a motion. <u>See</u> Hall v. Tyco Intern. Ltd., 223 F.R.D. 219, 231 n.6 (M.D.N.C July 27, 2004)(discussing the conversion of answer to motion to dismiss).

For the reasons stated herein, and for the further reasons set forth in the government's motion to dismiss, the government's Motion will be _granted_, the petitioner's Motion for Default Judgment will be _denied_; and the petitioner's Motion to Vacate will be _denied_ and _dismissed_.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record of the petitioner's underlying criminal case, on May 25, 2004, a Superceding Bill of Indictment was filed, charging the petitioner and another individual with having aided and abetted each other in the commission of an unarmed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2 (Count One), in the commission of an armed bank robbery, in violation of 18 U.S.C. §§ 2113(d) and 2 (Count Two), and in the use and carrying of a firearm during and in relation to a crime of violence, and in the possession of a firearm in furtherance of that offense, all in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Count Three).

On September 20, 2004, the petitioner appeared before the court and entered a "straight up" guilty plea to the simple bank robbery charge; however, he demanded a jury trial on the two remaining charges. Consequently, on October 5, 2004, a jury trial commenced as to those counts.

During the course of that trial, the government presented evidence from several witnesses, including the petitioner's co-

defendant, William Reynolds, and Reynolds' girlfriend. By its evidence, the government established that prior to April 5, 2004, the petitioner and Reynolds had spent time planning a bank robbery. The evidence further showed that on April 5, 2004, the petitioner borrowed a car and drove Reynolds and himself to a BB & T Bank branch in Charlotte, North Carolina, with plans of committing the robbery. On that occasion, the petitioner parked near the bank, and then went in to inspect its layout and to determine which employee should be targeted by Reynolds. When the petitioner returned to the car, he ensured that Reynolds was prepared for the robbery.

Next, Reynolds entered the bank wearing a wig, gloves and sunglasses, and armed with a loaded gun which he wore tucked in his belt/waistband area. The petitioner stayed with the car, and made ready for his and Reynolds' get-away. Once inside, Reynolds told a customer service representative that he had a gun on his side, not to set off any alarms, and that he did not want to kill her. Reynolds next gave the victim an illegible note along with a black bag, and ordered her to collect money from the tellers. Reynolds also announced aloud that no one had to get hurt because he did not want to shoot anybody.

After Reynolds retrieved the bag, he fled the bank carrying about $13,000.00 in cash along with a dye pack. However, when the dye pack exploded, Reynolds stumbled, dropping both the money

and the gun from his waistband. Reynolds then got into the car, and the petitioner drove away.

The government's evidence also showed that after receiving information through Crime Stoppers and conducting various inter-views, law enforcement authorities learned that the petitioner and Reynolds had committed the bank robbery. Consequently, on May 11, 2004, the petitioner was arrested on the subject charges. Following his arrest, the petitioner agreed to speak with law enforcement authorities.

Concerning the petitioner's knowledge of the gun, the government presented testimony from both Reynolds and his girl-friend reflecting that during the weeks preceding the robbery, the petitioner learned that Reynolds was in possession of a .38 caliber gun. Specifically, the witnesses stated that Reynolds' girlfriend had discovered the gun in her home, had informed the petitioner of her discovery and had asked him to remove the gun from her home. However, the petitioner did not remove the gun because he had been unable to find it at the residence.

Reynolds further testified that just before he went in to rob the bank, the petitioner had asked him if he "was straight," which Reynolds understood as an inquiry about whether he was armed. Reynolds testified that he affirmed that he had the gun. In addition, Reynolds testified that when he was running to the car after the robbery, he told the petitioner that he had dropped

his gun. Further, on cross-examination Reynolds testified that the petitioner had looked at the gun while the men were in the car just before the robbery. Reynolds told the jury that on the date of the robbery, the gun was visible to the petitioner during times when Reynolds held the gun in his hand, had it at his side, or on his seat.

The government also presented testimony from three law enforcement officials who led the investigation of this case. The sum of those witnesses' testimony was that the petitioner had admitted that he and Reynolds had planned the robbery; that he and Reynolds had observed the bank a few days before and on the day of the robbery; that he had learned several weeks before the robbery that Reynolds had a gun; that just before the robbery, he had ensured that Reynolds had the gun with him by asking Reynolds if he "was straight"; and that he had driven himself and Reynolds to and from the robbery.

Ultimately, the petitioner took the stand in his own defense. During his testimony, the petitioner denied having known that Reynolds was going to use a gun in the bank robbery. The petitioner further denied having seen Reynolds in possession of a gun, or having heard Reynolds mention the gun when he returned from the robbery. The petitioner also denied having told law enforcement officers that he knew of the gun. However, the petitioner conceded that Reynolds' girlfriend, in fact, had told

him about the gun and about her concerns over its storage in her home. In any event, the petitioner claimed that Reynolds would not have discussed using a gun with him because Reynolds knew that the petitioner was opposed to the use of guns.

At the conclusion of all of the evidence, the jury found the petitioner guilty of the armed robbery and firearm charges. Consequently, the United States Probation Office completed a Pre-Sentence Report on the petitioner. Notwithstanding the petitioner's supposed opposition to the use of guns, that Report reflects that his criminal history includes two convictions for Armed Robbery and two for Common Law Robbery, all of these convictions involving the petitioner's actual use of guns.

The Report did not recommend a three-level reduction for the petitioner's acceptance of responsibility. Rather, the Report recommended a one-level increase based upon the amount of money stolen. The Report also recommended that the petitioner be required to make restitution for the robbery. The petitioner objected to the foregoing matters and, instead, asked that the Report be amended to reflect that he had not physically possessed or used the gun which was involved in his case.

On May 20, 2005, the court held the petitioner's Sentencing Hearing. After hearing from the parties, the court adopted the findings in the Pre-Sentence Report and overruled the petiioner's objection to the absence of a reduction for acceptance of

responsibility because he had put the government to the burden of proof on two of his three charges. The court also denied the petitioner's request for an amended Report. Additionally, the court rejected the petitioner's request for a downward departure based upon the 15 years during which he had no convictions. Rather, the court found that no departure was warranted due to the petitioner's extensive criminal history.

However, the court granted the petitioner's objection concerning the amount of loss, finding that a one-level increase in his Offense Level on that basis would violate the then-recent United States Supreme Court decision announced in <u>United States v. Booker</u>, 543 U.S. 220 (2005). Furthermore, in light of the petitioner's conviction for armed bank robbery, the Court vacated his conviction on the simple bank robbery charge under Count One.

Thereafter, based upon its findings that the petitioner's Total Offense Level for the armed robbery was 22, his Criminal History Category was VI and his corresponding range of imprisonment was 84 to 105 months, the court sentenced the petitioner to 84 months on Count Two. The court also imposed a consecutive term of 60 months imprisonment for the gun conviction, thereby resulting in the petitioner's having received a total term of 144 months imprisonment.

The petitioner directly appealed his case to the Fourth Circuit Court of Appeals. <u>United States v. Fuller</u>, No. 05-4842

(4th Cir. Filed July 28, 2006). On appeal, the petitioner argued that the evidence was insufficient to support his two convictions. Id. at 2. In particular, the petitioner argued that the evidence was insufficient to show that he knew that his co-defendant possessed and would use a gun to commit the bank robbery. Id. The petitioner also argued that his sentence was unreasonable in light of the facts that he had not actually robbed the bank and had not physically possessed the gun. Id. at 4.

The Court of Appeals flatly rejected the petitioner's claims. Indeed, the appellate court found the government's evidence – that the petitioner's co-defendant had carried the gun into the bank and that the petitioner knew that his co-defendant was taking the gun into the bank – was sufficient to support the petitioner's convictions under an aiding and abetting theory. Id. at 3-4. Moreover, the Court of Appeals found that the government's evidence that the petitioner's co-defendant had announced his possession of the gun to his victims in the bank was sufficient to satisfy the "use" prong of § 924(c) even under Bailey v. United States, 516 U.S. 137, 149 (1995). Id. at 3.

Likewise, the appellate court determined that the petitioner's sentence was presumptively reasonable inasmuch as it fell within the properly calculated Sentencing Guidelines range. Id. at 4. Furthermore, the Court of Appeals found that defense

counsel had failed to overcome that presumption by his arguments that the petitioner was less culpable in the subject offenses and that his criminal history primarily consisted of old criminal conduct. Id. at 5. Accordingly, the appellate court affirmed both the petitioner's convictions and his sentences. Id. at 6.

On January 5, 2007, the petitioner returned to this court on the instant Motion to Vacate and a Supporting Affidavit which, when liberally construed together, set forth five claims for review. First, the petitioner alleges that his sentences for both aiding and abetting an armed bank robbery and the use and carrying of a firearm during that bank robbery constitute a violation of the Double Jeopardy Clause. Second, the petitioner alleges that based upon such Double Jeopardy violation, his sentence for the § 924(c) violation is illegal. Third, the petitioner argues that his former attorney was ineffective in several respects. Fourth, the petitioner argues that since he is being punished for the armed bank robbery, he must be deemed actually innocent of the firearm charge. Finally, the petitioner alleges that the prosecutor engaged in misconduct by unreasonably applying the state law principle of "Hand of One, Hand of All" to his case.

After obtaining an extension of time from the court, on April 10, 2007, the government filed its "Answer To Petitioner's Motion To Vacate . . . ," which the court has construed as a

motion to dismiss.  In that _de facto_ motion to dismiss, the government asserts that several of the petitioner's claims – the ones alleging prosecutorial misconduct, Double Jeopardy violations, actual innocence and an illegal sentence – are barred due to his procedural default of those matters.  The government further asserts that the petitioner's alleged lack of "awareness" of his right to have raised such claims on direct appeal does not establish a basis for excusing that default.

As to the petitioner's claim of actual innocence to the gun charge, the government argues in the alternative that this claim should be deemed foreclosed by the Fourth Circuit's determination that the evidence was sufficient to support that conviction under an aiding and abetting theory.  Thus, in the absence of a favorable, intervening change in the law, the government argues that the petitioner is not entitled to relitigate this claim.

Moreover, notwithstanding the aforementioned procedural bars, the government argues that it is entitled to dismissal as a matter of law on those claims because they are squarely foreclosed by the relevant legal principles.  More particularly, the government argues that the petitioner was not prosecuted under the so-called "Hand of One" principle.  Rather, the government asserts that it prosecuted the petitioner on the gun charge under an amply supported aiding and abetting theory.  As

such, the government argues that there was no prosecutorial misconduct.

As for the petitioner's Double Jeopardy arguments, the government argues that the law is settled that the petitioner's convictions and sentences under both 18 U.S.C. §§ 2113(d) and 924(c) are permissible; that Congress expressly amended § 924(c) in order to permit mandatory consecutive sentences, even when the underlying offense provides for an enhanced punishment for use of a firearm; and that the conduct punished by the subject statutes is distinct, so as to have warranted separate charges and punishments.

Concerning the petitioner's challenge to his former attorney's performance, the government essentially contends that since the matters about which the petitioner claims counsel should have argued are baseless, counsel could not possibly have been ineffective for his decision not to raise them. Consequently, the government argues that the petitioner's Motion to Vacate must be dismissed.

After being advised by the court of his right to respond to the government's motion, on May 21, 2007, the petitioner filed an "Affidavit In Response To Government's Motion To Dismiss [His] Motion To Vacate . . . ." By that document, the petitioner, using little more than hyperbole, attempted to rebut the government's strong showing that his claims were baseless. For

instance, the petitioner's Affidavit contends that the government's assertion of procedural default is "outlandish," and "falsely paradoxical and even borders on lunacy" (internal quotations omitted). Notwithstanding his reaction to this assertion, however, the petitioner failed to explain why his claims should not be deemed defaulted.

The petitioner clarifies that the aiding and abetting theory also is known as the "Hand of One" doctrine in South Carolina. Furthermore, the petitioner argues that, regardless of its label, that theory was incorrectly applied to him; that is, the petitioner concedes that § 924(c) was amended to apply even in cases where the underlying felony offense imposes enhanced punishment for the use of a firearm. Nevertheless, the petitioner argues that such enhanced punishment should not have been applied in his case because he was not the person who actually armed himself and committed the robbery.

The court finds that the petitioner's claims have been presented and fully rejoined. Accordingly, this matter is ripe for resolution.

## II. **ANALYSIS**

### 1. **The petitioner's non-counsel-related claims are subject to dismissal as procedurally defaulted**.

As was previously established, the record reflects that the petitioner filed an appeal to the Circuit Court, arguing only

12

that the evidence was insufficient to support his convictions on Counts Two and Three, and that his sentences were unreasonable given the facts of his case. The court's review further shows that the petitioner's appeal did not raise or otherwise even mention any of the non-counsel-related matters he is seeking to raise in this Motion. Thus, inasmuch as the petitioner is raising these matters for the first time in this collateral proceeding, such claims are subject to dismissal as procedurally defaulted.

In United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), cert. denied, 529 U.S. 1010 (2000), the court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id., citing United States v. Frady, 456 U.S. 152 (1982); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); and Stone v. Powell, 428 U.S. 465, 477 n.10 (1976).

Here, the petitioner concedes that he did not raise the subject claims on direct review, and claims that he "was unaware

of the existence of this issue or that it could be raised." However, as the government correctly has noted, that explanation falls far short of establishing cause and prejudice to excuse the default. Moreover, as the court has determined in connection with his claims against counsel, the foregoing allegations are legally baseless. Thus, the petitioner cannot establish that it would be a miscarriage of justice for this court to refuse to entertain these claims, and so these claims will be dismissed.

### 2. **The petitioner's claims against counsel also must be rejected**.

In addition to the foregoing claims, the petitioner alleges that he was subjected to ineffective assistance of counsel in several respects. Specifically, the petitioner alleges that counsel was ineffective for having failed to challenge the purported Double Jeopardy violation and the jury instructions related to Counts Two and Three; for having failed to inform the jury of the law pertaining to the Double Jeopardy Clause and United States Sentencing Guidelines, Amendment 599; and for having failed to object to the unreasonable application of the aiding and abetting principles in his case.

With respect to the petitioner's claims of ineffective assistance of counsel, he must show that counsel's performance was constitutionally deficient to such an extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-

14

91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Applying the foregoing to the petitioner's claims against his former attorney, it is apparent that he cannot demonstrate

either a deficiency or prejudice. Turning to the petitioner's claims that counsel was deficient in his handling of the Double Jeopardy issues, the court finds that the petitioner is mistaken concerning the status of the law in that area. First, the court first notes as a general premise that the United States Supreme Court has stated that cumulative punishments for separate offenses are not barred by the Double Jeopardy Clause. Garrett v. United States, 471 U.S. 773, 778 (1985). Rather, [i]t is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." Albernaz v. United States, 450 U.S. 333, 344-45 n.3 (1981).

Second, it is true that in Simpson v. United States, 435 U.S. 6 (1978) - one of the cases to which the petitioner refers - the Supreme Court reversed convictions and sentences for violations of both 18 U.S.C. §§ 2113(d) and 924(c) on the ground that the armed bank robbery statute already provided for enhanced punishment for use of a firearm. Critically, however, Simpson no longer is controlling on this issue. As the government correctly pointed out, in 1984, Congress amended the Comprehensive Crime Control Act to expressly permit the imposition of mandatory consecutive sentences for use of a firearm under § 924(c) even when the underlying offense provided for enhanced punishment for use of that same firearm.

Accordingly, in <u>United States v. Shavers</u>, 820 F.2d 1375, 1377 (4th Cir. 1987), this Circuit expressly rejected the defendant's double jeopardy claims and affirmed his convictions and sentences for violations of 18 U.S.C. §§ 2113(d) and 924(c). Indeed, the <u>Shavers</u> court stated that based upon the 1984 amendment to § 924(c), it is apparent that "Congress intended the imposition of cumulative punishment for violation of armed bank robbery, § 2113(d), and use of a dangerous weapon, § 924(c)." <u>Id.</u> at 1378. <u>See also</u> <u>United States v. Lawson</u>, 64 Fed. Appx. 380, 381 (4th Cir. 2003)(applying <u>Shavers</u> to reject double jeopardy claim attacking separate sentences for violations of 18 U.S.C. §§ 2113(d) and 924(c)).

More critically, in <u>United States v. Thomas</u>, 48 Fed. Appx. 82, 83 (4th Cir. 2002), the Circuit Court rejected the defendant's claim that his convictions for aiding and abetting an armed robbery and the use and carrying of a firearm during that robbery were unconstitutional because he personally did not use, carry, or brandish the gun. Rather, the court noted that the aiding and abetting theory was sufficient to support the subject convictions and sentences; and that, in light of <u>Shavers</u>, those convictions did not constitute double jeopardy. <u>Id.</u>

Thus, the <u>Thomas</u> decision makes it clear both that the petitioner's attempt to distinguish <u>Shavers</u> on the ground that he personally did not arm himself and commit the robbery simply is

unavailing, and that this claim against counsel is feckless. Given the status of the law in this area, counsel had no obligation to raise this baseless argument.

Inasmuch as the petitioner was not subjected to double jeopardy, his claim that counsel was ineffective for having chosen not to "give any jury instructions," or otherwise to make jury arguments based upon the non-existent double jeopardy violation cannot possibly provide him any relief. The court notes that the jury receives its instructions from the court, not from counsel for the parties. Therefore, had defense counsel even attempted to discuss these legal principles during his closing argument, the court would have been compelled to interrupt him and issue an admonition. Moreover, because there was no double jeopardy violation, there was no basis for defense counsel to ask the court to give a jury instruction related to that issue.

The petitioner also argues that counsel was ineffective for failing to challenge the government's reliance upon the aiding and abetting theory. However, as was previously indicated, the Court of Appeals specifically found that there was sufficient evidence to support the petitioner's armed bank robbery and firearm convictions under an aiding and abetting theory. <u>Fuller</u>, No. 05-4842, slip op. at 4. Therefore, the petitioner cannot

possibly demonstrate any prejudice on the basis of defense counsel's decision not to raise this claim at trial.

Furthermore, defense counsel was not deficient for failing to make a jury argument based upon United States Sentencing Guidelines Amendment 599. Indeed, Amendment 599 speaks only to how a sentence may be calculated under the Guidelines; it does not address the question of whether a defendant can be convicted and sentenced for his violation of multiple federal statutes. In this case, Amendment 599 would have precluded the court from including any Guidelines-based firearm enhancements in its calculation of the petitioner's armed bank robbery sentence. However, since this court did not impose any such Guidelines enhancements, Amendment 599 is irrelevant. Moreover, matters related to the calculation of a sentence under the Guidelines simply do not fall within the province of the jury. Therefore, counsel had no reason to raise Amendment 599 in his jury argument.

Based upon all of the foregoing, the court finds that the petitioner has failed in his obligation to demonstrate that he was prejudiced by counsel's performance, much less that counsel was deficient in any regard. Therefore, the petitioner's claims against counsel also must be dismissed.

Finally, the court turns to the petitioner's Motion for Default Judgment. This motion is premised on the fact that this

case was assigned to the undersigned for resolution, but another district judge entered an Order granting the government's motion for an extension of time to respond to the petitioner's Motion to Vacate. Consequently, the petitioner contends that the Order granting that extension should be declared void, and the government's answer should be stricken as "procedurally barred."

However, because the government's motion was supported by good cause, the undersigned assuredly would have granted that motion. Under the circumstances, the petitioner was not prejudiced or harmed by entry of the subject Order. Because there was no government default, the petitioner's Motion for Default Judgment will be denied.

### III.   CONCLUSION

The petitioner failed to establish that his procedural default of his non-counsel-related claims should be excused. Therefore, those claims cannot be reviewed for merit in this proceeding. Furthermore, the record of this matter establishes that the petitioner's claims against counsel are factually and/or legally baseless. Accordingly, the petitioner's Motion to Vacate must be dismissed.

### IV.   ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the petitioner's Motion for Default Judgment is **DENIED;**

2. That the government's <u>de facto</u> motion to dismiss is **GRANTED**; and

3. That the petitioner's Motion to Vacate is **DISMISSED**.

The Clerk shall send copies of this Order to the petitioner, pro se, and to counsel for the United States.

It is **SO ORDERED** this 2nd day of October, 2007.

ENTER:

David A. Faber
United States District Judge